**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:CR-19-259** |
| | : | |
| **v.** | : | **(Judge Jones)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **DONZA BROWN** | : | |

## MEMORANDUM AND ORDER

### I.  Introduction

Donza Brown has a criminal record which spans three decades and involves more than two dozen cases. Over this quarter century of criminal activity, Brown has been charged with theft, assault, drug possession, prostitution, contempt, forgery, and disorderly conduct. Brown has also been cited for probation violations in the past, has previously used aliases, and has a longstanding poly-substance drug abuse history.

While Brown also has an extensive drug abuse and mental health history, the degree to which she is physically impaired is far less clear. Indeed, at the time of her federal arrest, Brown denied any physical impairments, although she now asserts that she suffers from asthma, high blood pressure, diabetes, and various mental health problems.

Brown is currently charged along with others with participating in a violent armed drug trafficking conspiracy, distributing controlled substances, and

maintaining a place where illegal narcotics were stored, used, and distributed. Brown is, in a sense, the matriarch of this conspiracy, since her co-defendants include her son and a grandson.

Taking this criminal recidivism, persistent drug use, failure to comply with past probation conditions, and the disturbing nature of the pending charges into account, we ordered Brown detained pending trial. Brown now asks to reconsider this decision and release her on conditions that we previously deemed to be inadequate to ensure the safety of the community. This case comes before us for consideration of a motion for temporary release of the defendant filed pursuant to 18 U.S.C. § 3142(i), which provides that:

> The judicial officer may, . . ., permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142 (i).

In the instant case, the "compelling reason" which the defendant asserts justifies the defendant's temporary release from pre-trial detention is the COVID-19 pandemic that is sweeping the nation, and the dangers of infection which may result from close confinement in a custodial setting. This motion is fully briefed by the parties, and we have afforded all parties the opportunity to make evidentiary

presentations in support of their respective positions regarding temporary release for the defendant. Therefore, this motion is ripe for resolution.

We acknowledge the gravity of the defendant's concerns, which are shared by all Americans as this nation faces a pandemic without precedent in the past century of our nation's history. In addressing the instant motion, we must assess these individual medical concerns, apply the legal benchmarks mandated by Congress, and weigh these concerns against the important societal interests promoted by the Bail Reform Act, which calls for the detention of those defendants who present a danger to the community. Having conducted an individualized assessment of the facts and circumstances presented in this case, for the reasons set forth below it is ordered that the motion for temporary release is DENIED without prejudice.

## II.   **Factual Background and Procedural History**

On December 18, 2019, the defendant was charged with conspiracy to distribute and possess with intent to distribute heroin, fentanyl, cocaine, and cocaine base; distribution of cocaine base; and maintaining a place where narcotics were stored, used, and distributed in violation of 21 U.S.C. §§ 841(a)(1), 846, and 856. These charges stemmed out of Brown's involvement with a violent drug trafficking gang, the "NFL," or "Never Forget Loyalty" gang. Following the defendant's arrest, the United States moved pursuant to 18 U.S.C. § 3142 to detain the defendant

pending trial. Initial proceedings and a detention hearing were then conducted in this case on January 16 and 17, 2020.

At the time of these initial proceedings, the probation office prepared a comprehensive pre-trial services report, which provided the following information concerning the defendant's social and medical history, prior history of substance abuse, and criminal record: This report revealed that Brown has a lengthy criminal history spanning three decades and marked by more than two dozen criminal prosecutions. Brown's criminal history is prolific and encompasses an array of criminal charges including theft, assault, drug possession, prostitution, contempt, forgery, and disorderly conduct.

Further, Brown has a longstanding, persistent and profound history of poly-substance drug abuse, coupled with a documented history of mental illness marked by bi-polar disorder, depression, and suicidal ideation. Brown has also previously violated probation and has been charged with criminal conduct while under court supervision, demonstrating a past history of non-compliance with non-custodial court oversight.

Considering this constellation of adverse factors, all of which cautioned against release of the defendant, the pre-trial services report recommended the defendant's detention based upon a careful evaluation of her criminal history, mental

health history, non-compliance with past supervision, extensive active drug use, and the nature of the alleged instant offenses.

Following a hearing, we ordered the defendant detained pursuant to 18 U.S.C. § 3142, finding that the defendant presented a risk of flight and danger to the community, and that there was no condition or combinations of conditions which could assure the safety of the community or the defendant's appearance in court as required, including her proffered third-party custodian. On this score, we specifically found that the following factors supported the pre-trial detention of the defendant: the strength of the weight of the evidence against the defendant, the lengthy period of incarceration the defendant would face if convicted, the defendant's prior criminal history, her history of alcohol and substance abuse, and her past probation violation history.

The instant motion for temporary release does not focus upon or directly challenge any of these initial detention findings or determinations. Instead, the defendant's motion for release rests upon a concern shared by all: the risk of infection due to the current coronavirus pandemic. As the defendant notes, this risk of community spread is heightened in a custodial setting, where the very nature of confinement limits the ability of individuals to engage in the type of social isolation that is recommended to curb the spread of this disease.

In addition to this generalized concern, the defendant cites the following specific and individualized factors which heighten these medical concerns in the instant case: her age, high blood pressure, asthma, and diabetes. The defendant claims that these factors place her at higher risk of contracting COVID-19 and that any resulting illness, if she were to contract this novel virus, could be potentially life-threatening.

Notably, while Brown now alleges that she suffers from these medical conditions, at the time of her arrest, Brown "stated she is in good physical health with no medical problems." Thus, we are presented with conflicting and contradictory accounts from the defendant concerning her physical condition, health, and susceptibility to other ailments. While Brown attempted to explain this inconsistency by stating that she was confused at the time of her arrest, a consideration of Brown's physical condition now and at the time of her arrest strongly suggests that Brown is actually healthier now than she was when she was taken into custody. At the time of her arrest, Brown was a poly-substance drug abuser whose diabetes, high blood pressure, and asthma were poorly controlled. In contrast, the testimony that we received from the defendant at the May 1 hearing conducted in this case now indicates that Brown's medical needs are being addressed. She receives asthma treatments as needed, has her blood sugar and blood pressure levels checked daily, and has her temperature taken daily. Brown is also

provided a mask to limit her exposure to viruses. Consequently, Brown concedes that her chronic medical needs are largely under control.

Recognizing these circumstances, the Government opposes this motion, arguing that the factors and concerns that caused this court to order the defendant's detention in the past remain impediments to the defendant's release. In addition, the government points out that there have been no reported cases of COVID-19 in Dauphin County Prison ("DCP"), the location of the defendant's detention, and that DCP has taken numerous precautions to identify inmates and staff who are exhibiting symptoms of the virus and is prepared to quarantine, segregate, and treat anyone who does contract it.[1] Simply stated, the government argues that the defendant has not overcome the presumption in favor of her detention.

We agree.

---

[1] Specifically, the government asserts that DCP is currently on full quarantine status and closed to the public, keeping inmates in their housing units except for medical emergencies, and only allowing inmates out of their housing units in groups of ten or less. This is so inmates from different housing units will not come into contact with each other. In addition, the entire facility is being cleaned at least three times per day and inmates are being educated on proper hygiene with the cleaning supplies available to them. Staff are prohibited from reporting to work if they are ill, they are screened before arriving to work, and all staff have access to N95 masks if needed; staff at the booking center and staff and inmates who have left the prison for transport are likewise mandated to wear a mask. No inmates or staff have yet to test positive for the novel virus. In sum, DCP reports that it is complying with the latest CDC guidelines for prisons and their efforts have been successful to date.

### III.   **Discussion**

### A. **Temporary Release Under 18 U.S.C. § 3142**

While cast as a motion seeking temporary release under 18 U.S.C. § 3142 (i), this motion is best understood and evaluated in the context of the Bail Reform Act as a whole. In the Bail Reform Act, 18 U.S.C. § 3141, *et seq*., Congress created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court. As one court has recently observed:

> Before this Court can turn to the analysis under 18 U.S.C. § 3142(i), it is essential to look at the overarching structure of the statute. The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured the defendant does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must be released, as detention is "the carefully limited exception." Id.; see also United States v. Salerno, 481 U.S. 739, 755 (1987).
>
> In assessing what conditions, if any, can be fashioned, judges are directed to take into account available information pertaining to the factors identified under 18 U.S.C. § 3142(g). Those factors include the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms; the weight of the evidence against the defendant; the defendant's history and characteristics (including history relating to drug abuse, defendant's criminal history, and record of appearing at court proceedings); whether the detainee was on probation, parole, or other court supervision at the time of the allegedly offensive conduct; and the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). Ultimately, the information provided in each case aids in the individualized assessment that will result in the release or the detention of the person.

United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020).

Beyond this individualized assessment mandated by law, the Bail Reform Act also enjoins us to weigh release and detention decisions against a series of statutory presumptions. Principal among these presumptions which guide us in this custodial calculus are a series of statutory presumptions in favor of detention for defendants charged with violent crimes, serious drug trafficking offenses, or crimes involving the sexual exploitation of the most vulnerable in society, our children. As to these defendants, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed," one of these enumerated offenses. 18 U.S.C. § 3142 (e)(3). In this regard, it is also well-settled that an "indictment [charging an enumerated offense] is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).

Cast against this comprehensive statutory scheme prescribing the procedure for making initial bail and detention decisions, § 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142 (i). Until recently, there was a relative paucity of case law construing for us what would

constitute a "compelling reason" justifying the temporary release of a previously detained defendant. Of late, however, a rising tide of case law has construed the meaning and reach of § 3142(i) in the context of continuing custody decisions in the age of coronavirus.

From these cases a few guiding principles have emerged. First, the very nature of the standard prescribed by statute—which requires a showing of some "compelling reason" to warrant temporary release from custody—suggests that such motions must meet exacting standards and "the few courts that have ordered temporary release on the basis of such a condition have done so only 'sparingly' and typically in order 'to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries[,]' " United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting United States v. Hamilton, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)).

Second, like the initial decision to detain, a determination of whether a movant has shown compelling reasons justifying temporary release is an individualized judgment which takes into account the unique circumstances of each case and each defendant. Thus, courts have allowed for temporary release where a defendant's specific circumstances presented a compelling and immediate need for release. For example, release of a defendant is permitted under § 3142(i) when that defendant is

suffering from a terminal illness or serious injuries. See, e.g., United States v. Scarpa, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities); see also United States v. Cordero Caraballo, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshal's Service reused to take custody of him until his wounds closed).

There is a necessary corollary to this principle, calling for an individualized and specific showing of a compelling reason to satisfy the movant's burden of proof under § 3142(i). Cases construing § 3142(i) generally "have rejected emergency motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020) (citing United States v. Cox, No. 19-cr-271, 2020 WL 1491180 (D. Nev. Mar. 27, 2020)); United States v. Green, No. 19-cr-304, 2020 WL 1477679 (M.D. Fla. Mar. 26, 2020); United States v. Steward, No. 20-cr-52, 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020); United States v. Hamilton, No. 19-cr-54, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); see also United States v. Clark, No.

19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Rather, at a minimum courts have typically required proof of a "[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i)." United States of Am. v. Keith Kennedy, No. 18-20315, 2020 WL 1493481, at *4 (E.D. Mich. Mar. 27, 2020), reconsideration denied sub nom. United States v. Kennedy, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

The United States Court of Appeals for the Third Circuit has very recently underscored for us the necessity of a more particularized showing of a compelling need for release beyond proof of the generalized risks posed by COVID-19 when a prisoner seeks release from jail. Addressing this question in another custodial setting, petitions for compassionate release from custody, the court of appeals stated in terms that are equally applicable here that:

> We do not mean to minimize the risks that COVID-19 poses in the . . . prison system, particularly for inmates . . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify . . . release.

United States of America v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Finally, any determination of whether a movant has established compelling reasons which now warrant temporary release from custody must take into account the important considerations of public safety and flight which animated the original decision to detain the offender pending trial. Thus, "in considering the propriety of

temporary release, the court would need to balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention." United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020). In practice, therefore, a decision on a motion seeking release under § 3142(i) entails an informed judgment assessing both individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary." § 3142(i)

United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020).

It is against this statutory backdrop that we evaluate the instant request for temporary release from custody.[2]

---

[2] We note that the specific statutory context of § 3142(i), which controls here, and our prior findings that the defendant's release would present a danger to the community thoroughly distinguish this case from Thakker v. Doll, 1:20-CV-840, an immigration detention case relied upon by the defendant in his motion. Simply put, this case involves an entirely different statutory framework, and the compelling public safety considerations inspired by our finding that this defendant presented a danger to the community were completely absent in Thakker.

## B. <u>The Defendant's Motion for Temporary Release Will Be Denied.</u>

Our analysis of this motion begins with the proposition that "[w]hile the COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts, it is imperative that they continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief." <u>United States v. Roeder</u>, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020). In this case, our careful and impartial application of the legal standards mandated by § 3142(i), requires us to assess both the public safety grounds for the defendant's initial detention as well as: (1) the specificity of the defendant's stated COVID-19 concerns; (2) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (3) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

Turning first to an individualized evaluation of the defendant's COVID-19 concerns, our assessment begins with a recognition of the unprecedented health care crisis presented by the coronavirus pandemic. However, it is clear that under § 3142(i), we cannot grant release of a defendant previously deemed to be a danger to public safety or a risk of flight "based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." <u>United States v. Lee</u>, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020). In this case,

beyond a genuine, but generalized, concern regarding the risks created by COVID-19, the defendant alleges that she suffers from high blood pressure, asthma, and heart disease. The defendant claims that these factors, combined with her advanced age, place her at higher risk of contracting COVID-19 and that any resulting illness, if she were to contract this novel virus, would be potentially life-threatening.

However, we are constrained to note that Brown's accounts regarding her health and physical condition have been contradictory and inconsistent. Thus, while Brown now alleges that she suffers from these medical conditions, at the time of her arrest, Brown "stated she is in good physical health with no medical problems." While these inconsistencies cast some doubt over the veracity of Brown's claims, for purposes of this motion we will accept that Brown has provided some evidence of "particular vulnerability to the disease," proof which may "constitute a compelling reason for release under § 3142(i)." United States of America v. Kennedy, No. 18-20315, 2020 WL 1493481, at *4 (E.D. Mich. Mar. 27, 2020), reconsideration denied sub nom. United States v. Kennedy, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

Yet while proof of these medical conditions may be necessary to state a claim under § 3142(i), this diagnosis, standing alone, is not sufficient to automatically compel a defendant's release. Instead, we must then weigh those specific health concerns against the substantial public safety considerations which led us to order

15

the defendant's detention in the first instance. In this case, the following factors, unique to the defendant, compelled the decision to detain the defendant as a risk of flight and danger to the community: the strength of the weight of the evidence against the defendant, the lengthy period of incarceration the defendant would face if convicted, the defendant's prior criminal history, her history of probation violations as well as her history of alcohol and substance abuse.

In our view, these public safety factors grounded in Brown's current charges and her criminal history spanning decades outweigh the defendant's current health concerns. Indeed, other courts who have had the occasion to make such determinations have found that high blood pressure is insufficient to justify pre-trial release despite the admittedly increased risk that these defendants face in light of COVID-19. See United States v. Kahn, 2020 U.S. Dist. LEXIS 59411 (S.D. Fla. Apr. 2, 2020) (denying pretrial release for defendant who had suffered a heart attack and high blood pressure while incarcerated); United States v. Martin, 2020 U.S. Dist. LEXIS 46046 (D. Md. Mar. 17, 2020) (denying pretrial release for defendant suffering from diabetes, asthma, high blood pressure, and pain). Likewise, an asthma diagnosis, standing alone, may not warrant relief under § 3142(i) particularly when other factors caution against release of a defendant. On this score, we have found numerous cases from courts who have had the opportunity to consider whether impairments like asthma and elevated blood pressure justify pre-trial release, and the

vast majority of courts have determined that these conditions, standing alone, do not compel medical release under § 3142(i). See, e.g., United States v. Christian, 2020 U.S. Dist. LEXIS 60103 (D. Md. Apr. 6, 2020) (denying temporary release on grounds of underlying asthma diagnosis); United States v. Tucker, 2020 U.S. Dist. LEXIS 59516 (D. Md. Apr. 3, 2020) (collecting cases) (severe asthma, high blood pressure and high cholesterol insufficient to justify temporary release); United States v. Pritchett, CR 19-280, 2020 WL 1640280, *3 (W.D. Pa. Apr. 2, 2020) (asthma diagnosis insufficient to grant temporary release); United States v. Crosby, 2020 U.S. Dist. LEXIS 58189 (D. Md. Apr. 2, 2020) (previous diagnosis of pneumonia, asthma, and a need for an albuterol inhaler insufficient to allow temporary release); United States v. Jones, 2:19-CR-00249-DWA, 2020 WL 1511221, *3 (W.D. Pa. Mar. 29, 2020) (hypertension, sleep apnea, and asthma were not sufficient to grant temporary release); United States v. Gileno, 2020 U.S. Dist. LEXIS 47590 (D. Conn. Mar. 19, 2020) (high blood pressure, high cholesterol, asthma, and allergies insufficient to allow temporary release). Likewise when a detainee's diabetes is well-controlled, this medical condition does not provide a compelling reason justifying release under § 3142(i). See e.g., United States v. Serrano-Munoz, No. 1:17-CR-233, 2020 WL 2064094, at *5 (M.D. Pa. Apr. 29, 2020); United States v. Porter, 2020 WL 1984318, at *5 (W.D. Pa. April 27, 2020) (finding that "concern about potentially contracting the virus is currently too uncertain to rise to an exceptional

reason for release, even for inmates with underlying health conditions, including [ ] high blood pressure"); United States v. Minor, 2020 WL 1987117, at *1 (W.D.N.C. April 27, 2020) (denying motion for release where defendant had diabetes and high blood pressure); United States v. Calhoun, 2020 WL 1975186, at *3 (E.D. Mich. April 24, 2020) (same); United States v. Hernandez, 2020 WL 1974234, at *2 (S.D.N.Y. April 24, 2020) (same); United States v. Stevens, 2020 WL 1888968, at *4 (E.D. Pa. April 16, 2020) (same).

Moreover, to the extent the defendant raises constitutional concerns of a general nature relating to incarceration in a custodial setting during this pandemic, this argument fails as a matter of law for several reasons. At the outset, it is undeniably clear that "the Constitution does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400, 69 L. Ed. 2d 59 (1981). Further, as a legal matter it is well-settled that "[p]retrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process clause." Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987). See Graham v. Connor, 490 U.S. 386, 392 n. 6 (1989) (holding that "the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until 'after sentence and conviction'"); Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005). A pretrial detainee's claims regarding the conditions of his confinement fall within the ambit of the Fifth Amendment's Due Process clause, and the proper inquiry is

"whether [the conditions of confinement] amount to punishment of the detainee." Bell v. Wolfish, 441 U.S. 520, 535 (1979); see also Davis v. City of Philadelphia, 284 F.Supp.3d 744, 752 (E.D. Pa. 2018); Umarbaev v. Lowe, 2020 WL 1814157 (M.D. Pa. April 9, 2020) (Kane, J.).

On this score, it is well-settled that pretrial detention under 18 U.S.C. § 3142, on its face, does not violate the Fifth Amendment Due Process Clause. United States v. Salerno, 481 U.S. 739, 742 (1987). Rather, only when the conditions amount to punishment, and the detention is not reasonably related to a legitimate penological goal, are a pretrial detainee's due process rights violated. See Bell, 441 U.S. at 539; Habbard, 399 F.3d at 159-60. Thus, "[a]bsent showing of an expressed intent to punish on the part of the detention facility officials, ... if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" United States v. Cook, No. 3:16-CR-312 (M.D. Pa. April 22, 2020) (Mehalchick, M.J.) (quoting Bell, 441 U.S. at 538-39). Specifically, in the context of the recent COVID-19 pandemic, several courts have declined to hold that a pretrial detainee's due process rights are violated simply because they are incarcerated and at a higher risk of contracting the virus. See e.g., Cook, No. 3:16-CR-312 (M.D. Pa. April 22, 2020) (Mehalchick, M.J.); United States v. Frost, 2020 WL 1899561, at *4 (E.D. Mich. April 17, 2020);

United States v. Leake, 2020 WL 1905150, at *5 (D.D.C. April 17, 2020); United States v. Stevens, 2020 WL 1888968, at *5 (E.D. Pa. April 16, 2020).

Here, the defendant suggests that the conditions at Dauphin County Prison are inadequate and further expose pretrial detainees to the dangers of contracting COVID-19. However, Brown's recital of the daily care she receives describes measures that are clearly designed to limit the spread of the disease and ensure her well-being. While the fact of pretrial detention would clearly be uncomfortable and unpleasant, nothing in Brown's presentation supports an inference that prison officials are imposing these conditions on the defendant as a punitive measure. Quite the contrary, the Government has provided us with updates from the prison that outline the precautionary steps taken by prison officials to combat the spread of COVID-19 at this institution. Indeed, as of the date of this memorandum, there have been no confirmed cases of COVID-19 from the Dauphin County Prison. Thus, we find that the defendant has not shown that the conditions of her confinement at Dauphin County Prison have violated her right to Due Process under the Fifth Amendment.

We also note that this very general and sweeping argument attacking custodial conditions at this facility is in our estimation simply too broad in its reach to constitute the type of specific compelling reason for release contemplated by § 3142(i). Indeed, if we embraced the view espoused here we would be compelled to

release *all* detainees housed at this facility simply because of the general conditions of their confinement. Since Brown has not shown that those conditions of confinement are imposed in a punitive manner or deny detainees the minimal civilized measure of life's necessities, we will decline this invitation.

Simply put, DCP has yet to see any confirmed cases among its staff or inmate population and it has several measures in place which comply with the latest CDC guidance to prevent and contain an outbreak, should one occur. This, in combination with the defendant's relatively well-managed health conditions and the proactive measures in place at DCP, cause us to find that the defendant has not overcome the presumption in favor of her detention.

Finally, we have considered the defendant's proffered third-party custodian, but find that release of the defendant to this proposed third-party custodian simply does not address the numerous factors which call for the defendant's continued confinement. We also are constrained to note that the proposed third-party custodian, who has ties of blood and affinity to nearly half of the defendants named in this indictment and is currently facing summary harassment charges, may not be able to fully perform the role envisioned by the court for a third-party custodian.

## IV.    <u>Conclusion</u>

Based upon these findings, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) will be DENIED. "Because the Court is mindful that

both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.  An appropriate order follows.

So ordered this 4th day of May 2020.

_/s/ Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:CR-19-259** |
| | : | |
| **v.** | : | **(Judge Jones)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **DONZA BROWN** | : | |

## <u>ORDER</u>

In accordance with the accompanying Memorandum Opinion, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) is DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. <u>United States of America v. Lee</u>, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

So ordered this 4th day of May 2020.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge